**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NEW YORK CITY EMPLOYEES'
RETIREMENT SYSTEM, et al.,

        Plaintiffs,

v.

VALEANT PHARMACEUTICALS
INTERNATIONAL, INC., et al.,

        Defendants.

Civil Action No. 18-0032 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on five partial motions to dismiss filed in the above matter.[1] Plaintiffs[2] opposed (ECF No. 81), Defendants, except Pearson, replied (ECF Nos. 85, 86, 87, 88), and Defendants submitted a notice of supplemental authority (ECF No. 91). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Underwriter

---

[1] The motions currently pending before the Court are:
1. Partial Motion to Dismiss by Deutsche Bank Securities Inc. ("Deutsche Bank"), Barclays Capital Inc. ("Barclays") (collectively, "Underwriter Defendants"), Robert L. Rosiello, and Valeant Pharmaceuticals International, Inc. (ECF No. 50).
2. Motion to Dismiss by PricewaterhouseCoopers LLP (ECF No. 48).
3. Partial Motion to Dismiss by Tanya Carro (ECF No. 51).
4. Partial Motion to Dismiss by J. Michael Pearson (ECF No. 52).
5. Partial Motion to Dismiss by Howard B. Schiller (ECF No. 53).

[2] Plaintiffs are: New York City Employees' Retirement System; The New York Police Pension Fund; The Board of Education Retirement System of the City of New Yok; The Teachers' Retirement System of the City of New York; The Teachers' Retirement System of the City of New York Variable Annuity Program; The New York City Fire Department Pension Fund; The New York City Fire Officers' Variable Supplements Fund; The New York City Fire Fighters' Variable Supplements Fund; and The New York City Deferred Compensation Plan.

defendants' Motion to Dismiss Count VIII is granted, PricewaterhouseCoopers LLP's Motion to Dismiss is granted, and all other motions are denied.

I.  **Background**

This case and the underlying claims arise out of the same facts and circumstances as the class action currently pending before the Court under docket number 15-7658 ("Class Action"). The Court assumes the parties' familiarity with the underlying facts and recites the facts only to the extent necessary to decide the instant motions.

Plaintiffs allege that Valeant Pharmaceuticals International, Inc. ("Valeant") and certain executives, namely, J. Michael Pearson ("Pearson"),[3] Howard B. Schiller ("Schiller"),[4] Robert L. Rosiello ("Rosiello"),[5] and Tanya Carro ("Carro")[6] (collectively, the "Valeant Defendants"), Valeant's auditor, PricewaterhouseCoopers LLP ("PwC"), and Valeant's underwriters, Barclays and Deutsche Bank (Barclays and Deutsche Bank collectively, "Underwriter defendants"), participated in an "elaborate enterprise" to deceive investors by representing that Valeant "achieved sustainably high 'organic growth' . . . due to improved marketing" when, in reality, the profits were the result of price gouging and a "captive pharmacy network that relied on a host of illegal and deceptive practices." (Compl. ¶ 1, ECF No. 1.) According to Plaintiffs, Valeant

---

[3] Pearson served as Valeant's CEO and a director of the company from 2008 through May 3, 2016, and Chairman of the Board of Directors from March 2011 to January 2016. (Compl. ¶ 20, ECF No. 1.)

[4] Schiller served as Valeant's CFO and as an Executive Vice President ("EVP") from December 2011 to June 30, 2015. Schiller was also a member of Valeant's Board of Directors from September 2012 until June 2016. (*Id.* ¶ 21.)

[5] Rosiello served as Valeant's CFO and as an EVP beginning in July 2015 until he stepped down on December 31, 2016. (*Id.* ¶ 22.)

[6] Carro served as Valeant's Corporate Controller. (*Id.* ¶ 23.)

was actually engaged in "deceptive practices" through its "network of [secret] pharmacies." (Compl. ¶ 3.) Specifically, Plaintiffs allege that the Valeant Defendants and PwC "deliberately concealed from regulators the ownership and control of [Valeant-controlled pharmacy] Philidor," (*id.* ¶ 5) which "shield[ed] Valeant branded drugs from generic competition" (*id.* ¶ 3). Plaintiffs further allege that these Defendants "issued a host of false and misleading statements to a multitude of other constituencies, including investors." (*Id.* ¶ 5.) According to Plaintiffs, these misrepresentations caused Valeant's stock price to surge until the public learned the truth about the fraudulent scheme, at which point Valeant stock lost over 90% of its value. (*Id.* ¶¶ 7, 12.) Plaintiffs claim that they relied on Defendants' misrepresentations and material omissions in purchasing Valeant securities between January 3, 2013 and March 14, 2016 (the "Relevant Period"). (*Id.* at 1.)

Plaintiffs bring claims for: (I) Racketeering in Violation of N.J.S.A. § 2C:41-2(c) against the Valeant Defendants and PwC; (II) Racketeering Conspiracy in Violation of N.J.S.A. §2C:41-2(d) against the Valeant Defendants and PwC;[7] (III) Violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder ("Section 10(b)") against the Valeant Defendants and PwC; (IV) Violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) ("Section 20(a)"), against Defendants Pearson, Schiller, and Rosiello; (V) common law fraud against the Valeant Defendants and PwC; (VI) aiding and abetting against the Valeant Defendants and PwC; (VII) Violations of Section 18(a) of the Exchange Act, 15 U.S.C. § 78r ("Section 18"), against the Valeant Defendants, except Carro;[8] and (VIII)

---

[7] Plaintiffs bring Counts I and II pursuant to New Jersey's Racketeering Statute, or "N.J. RICO."

[8] Plaintiffs stipulated to the dismissal of Count VII against Carro, without prejudice. (ECF No. 47.)

negligent misrepresentation against the Valeant Defendants and the Underwriter defendants. (*See* Compl.)

Valeant, Rosiello, Pearson, and Schiller move to dismiss the N.J. RICO, aiding and abetting, Section 18, and negligent misrepresentation claims. (Valeant and Bank Defs.' Moving Br. 1, ECF No. 50-1; Pearson's Notice of Mot., ECF No. 52; Schiller's Notice of Mot., ECF No. 53.)[9] Carro moves on the same counts, except Section 18, which Plaintiffs dismissed. (Carro's Notice of Mot., ECF No. 51.) The Underwriter defendants move to dismiss the only count against them—negligent misrepresentation. (Valeant and Bank Defs.' Moving Br. 1.)

## II. Legal Standard

When analyzing a Rule 12(b)(6) motion, district courts conduct a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* at 210-11. Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Plaintiffs seeking redress for fraud, however, must meet a heightened pleading standard by "stat[ing] with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b).

---

[9] Valeant, Rosiello, and the Underwriter defendants jointly submitted a single memorandum and single reply brief (ECF Nos. 50, 87.) For ease of reference, these will be referred to as "Valeant's Moving Br." and "Valeant's Reply Br.," respectively. Schiller and Carro each submitted their own separate briefings (ECF Nos. 51 and 53), and Pearson relied on Valeant's briefing (ECF No. 53).

"A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

In addition, claims that allege federal securities violations must satisfy the Private Securities Litigation Reform Act ("PSLRA"). The PSLRA requires that a securities fraud complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (quoting *In re Suprema Specialties, Inc.*, 438 F.3d 256, 276 (3d Cir. 2006)).

**III.   Discussion**

In *Lord Abbett Investment Trust-Lord Abbett Short Duration Income Fund, v. Valeant Pharmaceuticals International, Inc.*, Civ. No 17-6365, 2018 WL 3637514 (D.N.J. July 31, 2018) ("*Lord Abbett*"), a case arising from the same facts as the instant action, this Court considered motions to dismiss similar claims against the Valeant Defendants and PwC. Several of the issues here mirror those raised in *Lord Abbett*. To the extent the Court has already addressed certain issues in *Lord Abbett*, the Court refers the parties to the detailed Memorandum Opinion it issued on July 31, 2018. Where the issues or arguments diverge, however, the Court analyzes the issues in depth here.

### A. PwC

PwC moves to dismiss all counts against it and supports its motion with the same arguments that it made in *Lord Abbett*. (PwC's Moving Br. 1, ECF No. 85.) Specifically, as to the N.J. RICO claims, PwC argues that Plaintiffs fail to plead PwC's knowing participation in an enterprise, or a sufficient motive for PwC's participation. (*Id.* 7-8.) The Complaint in this case alleges the same factual basis for the N.J. RICO claims that the Court found insufficient in *Lord Abbett*. For the same reasons, therefore, the Court finds that Plaintiffs have not sufficiently plead Count I or II against PwC.

As to the Section 10(b) claim, PwC argues that Plaintiffs fail to allege a strong inference of scienter, motive to commit fraud, or recklessness in issuing its audit reports. PwC argues that, at most, the allegations against PwC support a claim of negligence. (PwC's Moving Br. 4-6.) The Court agrees. Plaintiff's allegations that PwC recklessly ignored "red flags" in auditing Valeant (Pls.' Opp'n Br. 40-43, ECF No. 81) is insufficient to support a Section 10(b) claim, as the Court previously explained in *Lord Abbett*. Similarly, Plaintiffs have not pled the elements of common law fraud, namely, Plaintiffs have not identified an intentionally false and material misrepresentation.[10]

The only remaining Count against PwC, therefore, is for common law aiding and abetting. Common law aiding and abetting requires that: (1) an independent wrong exists; (2) the aider or abettor knows of that wrong's existence; and (3) substantial assistance be given in

---

[10] "To establish common-law fraud, a plaintiff must prove: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)); *see also Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 313 (3d Cir. 2012).

effecting that wrong. *Landy v. Fed. Deposit Ins. Corp.*, 486 F.2d 139, 162-63 (3d Cir. 1973). Here, as the Court has found that all other claims against PwC must be dismissed, there is no independent tortious conduct upon which to base the aiding and abetting claim. As such, this claim also fails. The Court, accordingly, grants PwC's Motion to Dismiss.

  **B.**  **The Valeant Defendants**

    **i.**  **N.J. RICO Claims (Counts I and II), Section 10(b) (Count III), and Aiding and Abetting (Count VI)**

  The Valeant Defendants move to dismiss the N.J. RICO claims against them and support their motions with the same arguments they raised in *Lord Abbett*. Specifically, the Valeant Defendants argue that Plaintiffs fail to plead an enterprise separate from the alleged racketeering (Valeant's Moving Br. 8-12, ECF No. 50), a discernable organization (*id.* 12-13), or that the N.J. RICO violations caused Plaintiffs' injury in connection with the purchase of Valeant notes (*id.* 13-14). The Valeant Defendants also argue that the Complaint does not allege an agreement to violate RICO, and thus fails to support an N.J. RICO conspiracy claim. (*Id.* 16-18.) The factual allegations for the N.J. RICO claims here are substantially similar to the allegations that the Court found sufficient to state a N.J. RICO claim in *Lord Abbett*. For the same reasons, therefore, the Court finds that Plaintiffs have sufficiently plead Counts I and II against the Valeant Defendants.

  The Valeant Defendants also move to dismiss the common law aiding and abetting claim, which was not addressed in *Lord Abbett*. The Valeant Defendants argue that the Complaint fails to state an underlying wrongful act and that, as a matter of law, principals may not aid and abet themselves. (Valeant's Moving Br. 19-20.) Plaintiffs respond that they have adequately alleged that the Valeant Defendants "each had knowledge of Valeant's fraud and participated in it by virtue of their prescribed roles in the Valeant Enterprise." (Pls.' Opp'n Br. 4.) Specifically, as to

Valeant, Rosiello, and Pearson, Plaintiffs claim that they have adequately alleged that these individuals participated in the concealment of the relationship between Valeant and Philidor and promoted Valeant's business with false and misleading statements. (*Id.* at 51-52.) As to Schiller, Plaintiffs argue that they have adequately alleged Schiller's close coordination with senior Valeant and Philidor executives and his intimate involvement in the planning, approval, direction, and monitoring of the scheme, including authorizing illegal practices. (*Id.* at 57.) Finally, as to Carro, Plaintiffs argue that they have sufficiently alleged her involvement in authorizing Philidor's illegal practices in the alternative fulfillment program and orchestrating of massive price increases, and drafting, preparing and/or approving the SEC filings and public releases. (*Id.* at 58.) The Court agrees. Viewing the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have adequately stated a claim for aiding and abetting. Second, at this early stage of the proceedings and prior to significant discovery, the Court declines to determine whether any of the Valeant Defendants could or could not, as a matter of law, aid and abet others. *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003). The Complaint describes specific conduct of each of the Valeant Defendants as it relates to the wrongful conduct alleged, and the Court, therefore, denies the Valeant Defendants' Motion to Dismiss Count VI.

### ii. Count VII (Section 18)

The Valeant Defendants, except Carro, move to dismiss the Section 18 claim as time-barred. Section 18 of the Exchange Act states that an underlying action may only be brought "within one year after the discovery of the facts constituting the cause of action." 15 U.S.C. § 78r(c). In 2002, Congress enacted the Sarbanes Oxley Act of 2002 ("SOX"), which provides a two-year statute of limitations and five-year statute of repose for private rights of

action involving claims of "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . of the Securities Exchange Act of 1934." 28 U.S.C. § 1658(b). The *New York City Employees* Plaintiffs filed their Complaint on January 2, 2018 for purchases of Valeant common stock that occurred between January 3, 2013 and March 14, 2016. (Compl. at 1.)

The Valeant Defendants argue that under Section 18, Plaintiffs had one year from the date that the alleged fraud was revealed to file the instant action, but that they filed more than eighteen months after that date. (Defs.' Moving Br. 22.) Plaintiffs respond that SOX applies to and increases the limitations period of Section 18 and, therefore, the claims are timely because the Complaint was filed within two years of when a Section 18 violation was discovered. (Pls.' Opp'n Br. 48-9, ECF No. 81.)

In *Lord Abbett*, this Court considered this issue and adopted the Second Circuit's ruling in *Dekalb County Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 407 (2d Cir. 2016). The Court, therefore, found that SOX's expanded limitations provision applies to Section 18 claims. *Lord Abbett*, 2018 WL 3637514, at *8. The Court, therefore, finds that the claims are timely and Defendants' Motion to Dismiss the Section 18 claims as time-barred is, accordingly, denied.

### iii. Count VIII (Negligent Misrepresentation)

The Valeant Defendants also move to dismiss the negligent misrepresentation claims against them. To maintain an action for negligent misrepresentation under New Jersey common law, claimants must plead that a person negligently misrepresented a material fact and, as a result of the claimant's justifiable reliance on such misrepresentation, he or she suffered economic harm. *See Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 289 (3d Cir. 1992) (citing *H. Rosenblum, Inc. v. Adler*, 461 A.2d 138, 142-43 (N.J. 1983)).

The Valeant Defendants argue that New Jersey has declined to allow the investing public to bring negligent misrepresentation claims in lawsuits based on securities fraud, and therefore, the claim is not viable in this context. (Valeant's Moving Br. 20, Schiller's Moving Br. 5, Carro's Moving Br. 14.)[11]  According to Defendants, "the New Jersey Supreme Court has limited the class of plaintiffs who can sue for negligent misrepresentation to particular plaintiffs . . . comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct." (Valeant's Moving Br. 20.)  Defendants rely heavily on *Prudential Ins. Co. of Am. v. Bank of America,* No. 13-1586, 2015 WL 502039, at *6 (D.N.J. Feb. 5, 2015) ("*Bank of America*"), where the court declined to permit purchasers of residential mortgage backed securities to proceed with a negligent misrepresentation claim, finding that they comprised a potentially limitless class. (Valeant's Moving Br. 20-21, Valeant's Reply Br. 13-15.)

In *Bank of America*, plaintiff purchasers of residential mortgage backed securities ("RMBS") brought a negligent misrepresentation claim against the financial institutions that sold the securities and purportedly misstated their value. *Bank of Am.*, 2015 WL 502039, at *1-2. The Court considered the specific allegations in the complaint through the lens of New Jersey's public policy to "'limit otherwise boundless liability and define an identifiable class of plaintiffs that may recover[,]'" *id.* at *6 (quoting *People Express Airlines v. Consol. Rail Corp.*, 100 N.J. 246, 264 (N.J. 1985)), and found dismissal appropriate. The Court explained that New Jersey courts have adopted the Restatement (Second) of Torts § 552 (1977), which limits the class of

---

[11] The Valeant Defendants do not argue SLUSA preempts the negligent misrepresentation claim in this case. SLUSA contains a statutory carve-out that preserves state law claims brought by "[s]tate pension plans." 15 U.S.C. § 77p(d)(1)-(2). Presumably, Defendants do not contest that Plaintiffs in this action qualify for this exception.

plaintiffs that can recover to (1) direct recipients of material misstatements; and (2) the limited group of persons who the defendant knows will receive the material misstatements from the direct recipients.[12] *Id.* at *5. Finding that the *Bank of America* complaint did not adequately allege that plaintiffs fell into either of these classes, the Court dismissed the negligent misrepresentation claim. *Id.*

The facts alleged here are different. While New Jersey law limits the world of plaintiffs that have a viable negligent misrepresentation claim, such a claim is still possible where plaintiffs were part of the appropriate class and can demonstrate reliance. For example, although the law precludes claims by the investing public generally based on the fraud on the market theory, *see Kaufman v. I-Stat Corp.*, 165 N.J. 94, 98 (N.J. 2000), where plaintiffs allege they actually received and relied upon the information, plaintiffs may bring a claim. The Valeant Defendants argue that Plaintiffs are not part of this "limited group." (Valeant's Reply Br. 14.) Plaintiffs disagree (Pls. Opp'n Br. 58-61), and emphasize that in *Shapiro v. UJB Financial Corp.*, the Third Circuit found that "[u]nder New Jersey common law, persons who negligently misrepresent material facts may be held liable to those who, as a result of their justifiable reliance on such misrepresentation, suffer economic harm." 964 F.2d 272, 289 (3d Cir. 1992) (citing *H. Rosenblum, Inc.*, 461 A.2d at 142-43)). Plaintiffs argue they have justifiably relied upon Defendants' misrepresentations and, therefore, may proceed with the negligent misrepresentation claim.

---

[12] This Restatement section has a third category, which provides that "[t]he liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them." Restatement of Torts (Second) ("Restatement") § 552(3). The Court recognized this category in *Bank of America* but did not analyze its applicability to *Bank of America* and no party here has argued that this section would be a basis for permitting these claims to proceed.

The Court finds that, construed in the light most favorable to the non-moving party, the Complaint alleges, with sufficient particularity, facts that indicate Plaintiffs are part of the "limited group" of claimants that can bring negligent misrepresentation claims against the Valeant Defendants. For example, the Complaint alleges that the asset managers: (1) read and relied upon Valeant's public filings and press releases; (2) participated in analyst calls with Valeant executives; and (3) attended conferences where securities analysts and investors spoke directly with Valeant management. (Compl. ¶¶ 357-62.) "The actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission." *Kaufman*, 165 N.J. at 109. Unlike plaintiffs in *Bank of America*, therefore, Plaintiffs in this case have sufficiently pled that Valeant made material misstatements to asset managers who relied upon the information in deciding whether to purchase Valeant stock on behalf of Plaintiffs (Compl. ¶¶ 358-59), ultimately causing Plaintiffs to suffer losses when those misstatements were revealed to the public (*id.* ¶¶ 357-63). The Court, accordingly, denies the Valeant Defendants' Motion to Dismiss Count VIII.

### C.  The Underwriter defendants

The Underwriter defendants move to dismiss the only count against them—for negligent misrepresentation. Plaintiffs allege that the Underwriter defendants made negligent misrepresentations in marketing and selling Valeant notes to Plaintiffs during the Relevant Period. (Compl. ¶¶ 439-44.) Specifically, Plaintiffs contend that the Underwriter defendants did not exercise reasonable care in selling Valeant securities to Plaintiffs because they breached their duty to "make a reasonable and diligent investigation of [the Valeant Defendants'] statements contained in the . . . debt offering documents." (*Id.* ¶ 441.) The Underwriter Defendants respond that as underwriters, they were "in the business of marketing securities" to Plaintiffs, not offering

guidance on the transactions. The Court agrees with Underwriter Defendants. Just as the Court found in *Bank of America*, there is no basis for extending liability to the Underwriter defendants in this instance. Under the Restatement, liability is appropriate for someone "who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions . . . ." *Bank of Am.*, 2015 WL 502039, at *4 (citing Restatement § 552(1)). As noted by the *Bank of America* court, "the question is whether Defendants are alleged to have supplied false information for the guidance of others in their business transactions." The Court there found that where defendants were "in the business of marketing securities," liability pursuant to § 552 was inappropriate. *Id.* (The underwriters "were not in the business of supplying guidance to others in their business transactions, as lawyers and accountants are, and do not come within the scope of § 552."). The Court finds this analysis persuasive and, accordingly, grants the Underwriters' Motion to Dismiss Count VIII.[13]

## IV. Conclusion

For the reasons set forth above, the Underwriter defendants' Motion to Dismiss Count VIII is **GRANTED**, PwC's Motion to Dismiss is **GRANTED**, and all other motions are **DENIED**. An Order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: September 26th, 2018

---

[13] The Court therefore, need not address Defendants' argument that the privity relationship undermines a negligent misrepresentation claim.